IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Nathaniel White, #264404,    ) | |
|    ) | Civil Action No. 6:06-0906-TLW-WMC |
|       Petitioner,    ) | |
|    ) | **REPORT OF MAGISTRATE JUDGE** |
|      vs.    ) | |
|    ) | |
| Warden Stan Burtt; and Henry    ) | |
| McMaster, Attorney General for    ) | |
| South Carolina,    ) | |
|    ) | |
|       Respondents.    ) | |
| _____) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## FACTS PRESENTED

The record reveals that the petitioner is currently confined in the Lieber Correctional Institution of the South Carolina Department of Corrections (SCDC) pursuant to commitment orders from the Richland County Clerk of Court. The Richland County Grand Jury indicted the petitioner at the November 17, 1999, term of court for burglary in the first degree of a dwelling (99-GS-40-4577). Attorneys William R. Bryant and Michael D. Truesdale, represented him on the charge. On February 15, 2000, the petitioner received a jury trial before the Honorable James C. Williams, Jr. The jury found petitioner guilty as charged, and Judge Williams sentenced him to life imprisonment.

The petitioner timely served and filed a notice of appeal. Assistant Appellate Defender Tara S. Taggart represented the petitioner on appeal. On March 7, 2001, the petitioner filed his final brief of appellant, in which he presented the following issues for review:

> (1)    Whether appellant's sentence violates the prohibition against cruel and unusual punishment found in both the United States Constitution and the Constitution of the State of South Carolina.
>
> (2)    Whether the trial judge committed reversible error in refusing to charge second- or third-degree burglary.

The State filed a final brief of respondent on March 24, 2001. Assistant Attorney General Charles H. Richardson represented the State on appeal. On April 1, 2002, the South Carolina Supreme Court affirmed the petitioner's conviction in a published opinion. *State v. White*, 562 S.E.2d 305 (S.C. 2002). The South Carolina Supreme Court sent the remittitur to the Richland County Clerk of Court on April 19, 2002.

The petitioner filed a *pro se* post-conviction relief (PCR) application (02-CP-40-4334) challenging his conviction and sentence on September 6, 2002. He made the following allegations in his application (verbatim):

> (1)    Ineffective assistance of counsel
>
> (2)    Ineffective assistance of appellant defender
>
> (3)    Prosecutor Misconduct
>
> (4)    Abuse of discretion of trial judge
>
> (5)    United States Constitution and the State Constitution Violations

The State made its return on December 22, 2003.

On May 25, 2004, the Honorable Alison Renee Lee held a hearing into the matter at the Richland County Courthouse. The petitioner was present in court; and attorney Tara Dawn Shurling represented him. Assistant Attorney General Lakesha W. Jeffries

2

represented the State.  The petitioner testified at the hearing, as did trial counsel, William B.

Bryant.  On June 14, 2004, Judge Lee filed an order in which she denied relief and dismissed

the application with prejudice.  The order addresses only the allegations of ineffective

assistance of counsel that were added and argued at the PCR hearing. Specifically, the order

addresses the petitioner's allegations that trial counsel was ineffective because counsel (1)

"failed to raise issues of Petitioner's prior charges enhancing" the burglary charge for which

he was tried; and (2) "failed to zealously pursue discussion with the solicitor's office to receive

a plea bargain agreement."  A timely notice of appeal was served and filed.

Assistant Appellate Defender Robert M. Pachak represented the petitioner in

collateral appellate proceedings. On November 22, 2004, Mr. Pachak filed a *Johnson* petition

for writ of certiorari[1] and motion to be relieved as counsel, in which he presented the following

question for review by the South Carolina Supreme Court:

> Whether there was any evidence to support the PCR judge's
> findings that defense counsel was not ineffective in failing to
> challenge petitioner's prior sentences for armed robbery which
> were used to enhance his current burglary charge?

The State filed a letter return on November 30, 2004.

The petitioner filed a *pro se* petition for writ of certiorari on January 5, 2005, in

which he presented the following arguments:

> (1)    It was constitutional error for the PCR court to hold that
> Petitioner's trial counsel was not inept ... for failing to investigate,
> research, and preparing Petitioner a defense for his burglary
> conviction being enhanced ...
>
> (2)    The S.C. Court of Appeals lacked subject matter
> jurisdiction to entertain, and adjudicate Petitioner's appeal, do

---

[1]*See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988). *Johnson* sets forth the procedures for counsel to follow when filing meritless appeals in state PCR cases pursuant to *Anders v. California*, 386 U.S. 738 (1967). *Contra Pennsylvania v. Finley*, 481 U.S. 551 (1987) (prisoner, who had no equal protection or due process right to appointed counsel in post-conviction proceedings, also had no right to insist on *Anders* procedures for withdrawal of appointed counsel when collateral counsel determined direct appeal was frivolous).

(sic) to the Circuit Court not issuing a written court order granting or denying his Post -Trial motions ...

(3)     The Circuit Court lacked subject matter jurisdiction to entertain, and adjudicate Petitioner's case for burglary in the first degree, do (sic) to Petitioner never being served with an "indictment" prior to trial ...

(4)     The Circuit Court lacked subject matter jurisdiction on the charge of burglary in the first degree, do (sic) to the indictment not sufficiently stating the offense to enable Petitioner to prepare his defense ...

(5)     The Circuit Court lacked subject matter jurisdiction on the charge of burglary in the first degree do (sic) to the charging instrument not indicating when the indictment was true-billed ...

(6)     The Circuit Court lacked subject matter jurisdiction on the charge of burglary in the first degree, do (sic) to the indictment not charging that the offense occurred in the state of South Carolina ...

(7)     The Circuit Court lacked subject matter jurisdiction on the charge of burglary in the first degree, do (sic) to a material variance in the indictment, and the proof adduced at trial ...

(8)     The Circuit Court lacked subject matter jurisdiction to entertain and adjudicate Petitioner's for burglary in the first degree, do (sic) to the indictment not being filed with the Clerk of Court ...

The South Carolina Supreme Court filed an order on January 6, 2006, in which it denied certiorari and granted counsel's request to withdraw.  The petitioner filed a "petition for rehearing and rehearing en banc" on January 17, 2006.  The South Carolina Supreme Court denied the rehearing petition on February 3, 2006, and sent the remittitur to the Richland County Clerk of Court on February 24, 2006.

The predicate offense for the petitioner's LWOP sentence is his 1995 armed robbery conviction.  The Richland County Grand Jury indicted him at the June 1995 term of court for armed robbery (95-GS-40-23847).  Attorney Duffie Stone represented him on the charge.  On August 1, 1995, the petitioner pled guilty to this charge before the Honorable L.

4

Casey Manning. Judge Manning sentenced him to nine years imprisonment. The petitioner did not appeal his guilty plea or sentence.[2]

However, on September 6, 2002, the petitioner filed a second *pro se* PCR application (02-CP-40-4335) challenging his armed robbery conviction and sentence in 95-GS-40-23847, in which he made the following allegations:

(1)    Ineffective assistance of counsel

(2)    Illegal sentence

The State made its return and motion to dismiss on April 14, 2004. The State asserted that application should be summarily dismissed for failure to comply with the filing procedures of S.C. Code Ann. §17-27-45(A) (Supp. 2005).

On September 6, 2004, the Honorable Paul M. Burch held a hearing into the motion to dismiss at the Richland County Courthouse. The petitioner was present in court and attorney Tara Dawn Shurling represented him. Assistant Attorney General Lakesha W. Jeffries represented the State. The PCR court did not take any testimony. On October 6, 2004, Judge Burch filed an order denying relief and dismissing the application with prejudice. The order found that the challenge to the legality of the petitioner's sentence was not a challenge to the trial court's subject matter jurisdiction and that the application was time barred under §17-27-45(A). A timely notice of appeal was served and filed.

Assistant Appellate Defender Wanda H. Carter represented the petitioner in collateral appellate proceedings. On April 29, 2005, Ms. Carter filed a *Johnson* petition for

---

[2]Because the petitioner did not timely appeal from his plea, no transcript of his plea is or would have been available when he filed his PCR application attacking the validity of the conviction and sentence. See Rule 607(I), SCACR (presently stating that "[e]xcept as provided below, a court reporter shall retain the primary and backup tapes of a proceeding for a period of at least five (5) years after the date of the proceeding, and the court reporter may reuse or destroy the tapes after the expiration of that period. ... In any proceeding which has been transcribed, the court reporter shall retain the primary and backup tapes which have been transcribed for a period of at least thirty (30) days after the original transcript is sent to the requesting party, to allow any party to challenge the accuracy of the transcription. If no challenge is received by the court reporter within the thirty (30) day period, the tapes may be reused or destroyed").

writ of certiorari and motion to be relieved as counsel, in which she presented the following

issue for review by the South Carolina Supreme Court:

> The lower court erred in dismissing petitioner's post-conviction relief application as untimely filed under *Peloquin v. State*, 321 S.C. 468, 469 S.E. 2d 606 (1996).

The State filed a letter return on May 2, 2005. The petitioner filed a *Pro Se* response on

June 16, 2005, in which he presented the following questions:

> (1)    Whether the circuit court lacked subject matter jurisdiction when Petitioner was not aprised (sic) of the nature, and the cause of the accusation against him?
>
> (2)    Whether the circuit court lacked subject matter jurisdiction when there is no written court order to continue Petitioners case beyond 180 days from the date of his arrest?
>
> (3)    Whether the Petitioner should be granted another PCR hearing when he was not provided with the transcript to challenge the subject matter jurisdiction of the court?

It appears this case is still pending before the state supreme court.

> In his petition now before this court, the petitioner raises the following

allegations:

> **GROUND ONE:** Trial counsel was ineffective for not challenging my prior convictions for enhancement purposes ...
> **SUPPORTING FACTS**: Trial counsel[']s shortcomings of failing to challenge my prior conviction[']s validity caused me to be sentenced to life without parole, because my prior convictions were not valid by the law and could not be used for enhancement purposes. ...
>
> **GROUND TWO**: The Petitioner avers that his 6[th] and 14[th] Amendment Rights to the United States Constitution was violated because he never received notice of the nature and the cause of the accusation against him.
> **SUPPORTING FACTS**: The Petitioner ... was not presented or served an indictment. Prior to trial, thereby he was not apprised of the nature and the cause of the accusation against him which is a Constitutional violation.

6

**GROUND THREE**: The Petitioner avers that he is being held in custody in violation of the 14th Amendment to the United States Constitution, because he is being deprived of his liberty on a charge that's not in his indictment.

**SUPPORTING FACTS**: The Petitioner was indicted for entering the dwelling of Debra Simms, however the proof adduced at trial was that the Petitioner entered a room at the Comfort Inn Motel. It was a fatal variance in the proof and the charge, which is a constitutional violation.

**GROUND FOUR**: The Petitioner[']s sentence violates the 8th Amendment to the United States Constitution because it is cruel and unusual punishment

**SUPPORTING FACTS**: The fact's in this case dictates that a life sentence without parole is cruel and unusual punishment. (Sic). The statute was designed to protect the home against unlawful intrusion, and that is not the circumstances in this case. The enhancement in this case was unconstitutional.

The respondents filed a motion for summary judgment in this case on June 14, 2006. By order filed June 15, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his response to the motion for summary judgment on August 21, 2006.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e), provides in pertinent part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

7

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Title 28, U.S.C., Section 2244(d) provides:

(1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

8

## ANALYSIS

***Ground One***

In ground one, the petitioner asserts that trial counsel was ineffective for not challenging his prior convictions, which the State used for enhancement purposes under then S.C. Code Ann. § 17-25-45 (Supp. 2000). The respondents argue that the state court's rejection of his argument was not "contrary to" and did not involve "an unreasonable application of" clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him. Review of counsel's performance is "highly deferential." *Id.* at 689. This allegation was raised at the May 25, 2004, PCR hearing and was addressed in the June 14, 2004, Order of Dismissal filed by the PCR judge, Judge Lee (app. 347-51). The PCR judge found that trial counsel was not ineffective because S.C. Code Ann. § 17-25-45 (Supp. 2006) "allows the State to seek a sentence of life without parole on second violent offenders. This Court finds that the Applicant's prior convictions subjected him to the effects of this statute which allows for the sentence of life without parole. Accordingly, this allegation is denied and dismissed with prejudice" (app. 349).

As a matter of state law, if a defendant collaterally attacks a prior conviction which the State seeks to use under a sentence enhancement statute, then he has the burden of proving that the prior conviction is invalid. *State v. Payne*, 504 S.E.2d 335, 337-38 (S.C. Ct. App. 1998). *See also Parke v. Raley*, 506 U.S. 20, 34 (1992) (Due Process Clause permits a state to place the burden of proof upon a defendant who collaterally attacks the validity of a prior conviction where the government seeks to use it under a sentence

9

enhancement statute); *United States v. Urrego-Linares*, 879 F.2d 1234, 1238-39 (4th Cir.1989) (in applying federal sentencing guidelines, defendant has the burden of establishing by a preponderance of the evidence the applicability of any mitigating factors to lower the sentencing range).

The petitioner argues that his trial counsel should have challenged the validity of his prior armed robbery conviction.  He pleaded guilty to the armed robbery charge on August 1, 1995, and the indictment shows the offense occurred on or about September 12, 1994.  The petitioner was sentenced to nine years on the armed robbery charge (2005 app. 27).  The provision of the armed robbery statute requiring a mandatory minimum 10-year sentence became effective on January 12, 1995.  S.C. Code Ann. § 16-11-330(A) (Supp. 1995).  The provision in effect at the time of the offense did not include the mandatory 10-year minimum.  In *State v. Varner*, 423 S.E.2d 133, 133-34 (S.C. 1992), the South Carolina Supreme Court stated, "In the absence of a controlling statute, the common law requires that a convicted criminal receive the punishment in effect at the time he is sentenced, unless it is greater than the punishment provided for when the offense was committed."  The petitioner contends that "[t]he law at the time that [he] went to trial was that the armed robbery carried a minimum  10 year sentence . . . , [and] [t]here is a reasonable probability that if counsel would have challenged the validity of the prior armed robbery conviction, the court may have found that by a 'preponderance' of the evidence that the 9 year sentence was outside of the legislative intent and not within the ambit of the statute for armed robbery, and [his] sentence would not have been enhanced under this statute. . . . (pet. brief 7-8).

The respondents argue that petitioner did not and does not present any evidence that the 1995 armed robbery *conviction* is invalid.  Rather, he showed, at best, that the sentence he received was below the statutory minimum for armed robbery at the time of his sentence.  In this situation, only the sentence is vacated and a lawful, more stringent sentence imposed.  *See United States v. Kaplan*, 588 F.2d 71, 74-75 (4 Cir. 1978) (conviction

10

of the defendant Kaplan on all counts was affirmed, but case remanded for resentencing); *State v. Ray*, 427 S.E.2d 171, 175 (S.C. 1993) (guilty plea to capital murder under *North Carolina v. Alford*, 400 U.S. 25 (1970), affirmed but case remanded for re-sentencing because the trial judge erred in proceeding directly from the plea to sentencing without waiting at least 24 hours as required by S.C. Code Ann. § 16-3-20(B) (Supp.1991), and the trial judge erred in failing to secure an on-the-record waiver of appellant's right to testify at the sentencing phase proceeding). *Cf. United States v. Scarborough*, 777 F.2d 175, 183 (4th Cir. 1985) (District court in special offender hearing erred in refusing to consider defendant's arguments that a prior conviction asserted as basis for enhanced sentence was invalid; however, error was harmless as evidence offered by defendant revealed that his collateral challenge to prior conviction could not succeed: Fourth Amendment claim was barred under *Stone v. Powell*, 428 U.S. 465 (1976) and there was sufficient evidence to convict). The petitioner has not shown that he was prejudiced by counsel's failure to attack the previous armed robbery sentence. Accordingly, the claim fails.

### Ground Two

In ground two, the petitioner asserts that his Sixth and Fourteenth Amendment rights were violated because he was not served with an indictment prior to trial. While this allegation was included in his January 1, 2005, *pro se* response to the November 22, 2004, *Johnson* petition for writ of certiorari, it was procedurally defaulted and could not have been addressed by the state supreme court, even under *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002), since he did not obtain a ruling on this allegation from the PCR court. *See Pruitt v. State*, 423 S.E.2d 127, 127-28 (S.C. 1992), (issue must be raised to and ruled on by the PCR judge in order to be preserved for review); *Plyler v. State*, 424 S.E.2d 477, 478 (S.C.1992) (same). As a result, this allegation is procedurally defaulted for purposes of federal habeas corpus review. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)

11

("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. ...We have applied the independent and adequate state ground doctrine not only in our own review of state court judgments, but in deciding whether federal district courts should address the claims of state prisoners in habeas corpus actions. The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds."); *Kornahrens v. Evatt*, 66 F.3d 1359, 1362 (4th Cir. 1995) (Even under *in favorem vitae* review, an inmate's claim is procedurally barred unless specifically raised to the state supreme court).

        In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. The petitioner cannot show cause for the default since he could have pursued this allegation in his PCR application but chose not to do so. He cannot show prejudice from the default because he did not present any evidence to support this allegation. Moreover, a state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter which is cognizable in federal habeas corpus. *Wright v. Angelone*, 151 F.3d 151 (4th Cir. 1998); *Wells v. Egeler*, 532 F.2d 1058, 1059 (6th Cir.1976) ("[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary").

*Ground Three*

In ground three, the petitioner contends that there was a fatal variance in the proof and the charge at trial because he was indicted for entering the dwelling of Debra Simms, but the proof adduced at trial was that he entered a room at the Comfort Inn Motel. Much like ground two, this allegation was procedurally defaulted in state court proceedings under *Coleman* because it could have been raised at trial and on direct appeal but was not.

The petitioner cannot show prejudice from the default. First, it is a complaint about the state law issue of what constitutes a "dwelling" and does not state a claim upon which habeas relief may be granted. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) and citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). "Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam )) (footnote omitted). Second, the State's evidence, set forth in the footnote below,[3] shows that there was a burglary of a "dwelling," as that term is used in S.C. Code Ann. § 16-11-311(A) (Supp. 2006). The state supreme court reached this conclusion, as a matter of state law, in *State v. White*, when it held that the trial judge did not

_____

[3]The evidence presented at trial is as follows: Debra Sims, her son, and her boyfriend, Jefferey Walker, were staying at the Comfort Inn motel in Columbia on August 21, 1999. Debra and her son each had a keycard to their room. The petitioner approached the group as they were lounging by the pool. After engaging in conversation, Jefferey gave the petitioner two dollars and a cigarette. Columbia City Police Officer Olga Cora, the security guard for the motel, observed the petitioner going from room to room at the motel around 11:00 p.m. He was attempting to enter rooms with a keycard. Upon approaching room 203, the room registered to Debra Sims, the door opened and the petitioner entered the room. Cora testified that apparently the petitioner heard her radio which she was using to call for back-up assistance, and he fled from the room. Cora subsequently arrested the petitioner in the motel lobby. Debra testified that, upon being questioned by Cora, she could not find the keycard to her room which had been hidden under a towel near the pool. There was testimony that no one had given the petitioner consent to enter the motel room. He was also not a guest at the motel (app. 76, 84, 90-106, 111-18, 121- 139,151-54).

13

err in refusing to charge on the lesser-included offenses of second-and third-degree burglary. 562 S.E.2d 305, 307-08 (S.C. 2002); *State v. Goldenbaum*, 365 S.E.2d 731 (S.C. 1988) (where victim's apartment was a "dwelling," there was no evidence from which the jury could have inferred defendant was guilty of second-or third-degree burglary).  The state supreme court also rejected the contention that the motel room was not a dwelling because unoccupied at the time of the crime.  *White*, 562 S.E.2d at  308 ("we find the trial court properly held the motel room in question was being used as a dwelling under S.C. Code Ann. §§ 16-11-10 and 16-11-310 (dwelling is defined to include any building in which there sleeps a tenant or person who lodges there with a view to the protection of property; for purposes of burglary statute, dwelling also means living quarters of a building used or normally used for sleeping, living, or lodging by a person). . . .  Further, as noted above, the fact that the 'dwelling' was temporarily unoccupied is irrelevant in light of the fact that the occupant intended to return.") (citations omitted).  Based upon the foregoing, this claim fails.


**Ground Four**

        In ground four, the petitioner contends that his life sentence without parole violates the Eighth Amendment's prohibition against cruel and unusual punishment because the burglary statute "was designed to protect the home against unlawful intrusion, and that is not the circumstances in this case.  The enhancement in this case was unconstitutional." The respondents argue that the state court's rejection of his Eighth Amendment argument was not "contrary to" and did not involve "an unreasonable application of" clearly established Federal law, as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1). This court agrees.

        On direct appeal, the petitioner asserted that his life without parole sentence for first degree burglary violated the Eighth Amendment. The state supreme court rejected the petitioner's Eighth Amendment argument as follows:

14

Moreover, application of the Two Strikes law to White does not constitute cruel and unusual punishment. Recently, in *State v. Jones*, 344 S.C. 48, 543 S.E.2d 541 (2001), we rejected the defendant's claim that imposition of life without parole pursuant to S.C. Code Ann. § 17-25-45 constituted cruel and unusual punishment. There, we held the most serious nature of armed robbery, when combined with the defendant's prior most serious offense of assault and battery with intent to kill, was not disproportionate to a sentence of life without parole; the sentence was proportionate to that of other criminals in this state with a second most serious offense conviction; and life sentences for armed robbery were imposed under recidivist laws in other states.

The sentencing here likewise withstands a cruel and unusual punishment challenge. White has two prior convictions for the most serious offense of armed robbery. Further, notwithstanding the motel room White entered was unoccupied, the crime he committed is first-degree burglary, a most serious offense. Given that a life sentence is possible for even first offense first-degree burglary convictions, *see* S.C. Code Ann. § 16-11-311(B), a life sentence without parole for a recidivist with one or more previous convictions of most serious offenses does not constitute cruel and unusual punishment. As in *Jones*, White's life sentence is proportionate to any other criminal who has a second most serious conviction, and life sentences for first-degree burglary under recidivist laws have withstood such a challenge before. *Cf. Timbrel v. State*, 421 So.2d 1319 (Ala. Crim. App.1982)(holding life imprisonment is not cruel and unusual punishment for a first degree burglary conviction after previous convictions).

We note that the Ninth Circuit Court of Appeals recently held application of the California Three-Strikes law, imposing 25-year-to-life sentences for petty theft, constituted cruel and unusual punishment under the Eighth Amendment. *Brown v. Mayle*, 283 F.3d 1019, 2002 WL 187415 (9th Cir.2002). The *Brown* court relied upon its recent opinion in *Andrade v. California*, 270 F.3d 743 (9th Cir.2001), in which it held that a 50-year-to-life sentence for two petty theft convictions violated the Eighth Amendment. However, both *Andrade* and *Brown* were based upon the fact that the core conduct for which the defendants had received their "third strike" were not traditionally punishable as felonies, but were generally misdemeanor first offenses with minimum jail sentences. [FN4] Unlike those cases, White is charged with the violent felony offense of first-degree burglary, punishable in-and-of itself by up to life imprisonment. Accordingly, *Brown* and *Andrade* are inapposite. We hold the sentence here withstands a cruel and unusual punishment challenge. *Jones, supra.*

> FN4. Unlike the recidivist statute in question in *Brown* and *Andrade*, S.C.Code Ann. § 17-25-45 would not impose a life sentence for the offenses

> of the defendants in those cases as they were neither most serious nor serious offenses.

*White*, 562 S.E.2d at 306-07.

First, as argued by the respondents, the petitioner's claim that his life without parole sentence is cruel and unusual punishment because the burglary statute "was designed to protect the home against unlawful intrusion" and there was no such home invasion ignores that he received his life without parole sentence for violation of the state's recidivist provision. Clearly, the sentence imposed furthers protecting society against repeat violent offenders, and he is being punished as a repeat offender and not simply for burglary in the first degree. *Cf. Gryger v. Burke*, 334 U.S. 728, 732 (1948) (sentencing as an habitual criminal is not viewed as a new jeopardy or additional penalty for an earlier crime; rather it is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because it is a repetitive one).

There is also no merit to the petitioner's assertion that the mandatory nature of S.C. Code Ann. § 17-25-45, which requires the judge to impose life without parole with no discretion, constitutes cruel and unusual punishment. In the past, the United States Supreme Court had established a three-part test for analyzing proportionality claims under the Eighth Amendment. *See Solem v. Helm*, 463 U.S. 277 (1983). In *Solem*, the Court set forth the factors to be considered as being (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction and (3) the sentences imposed on criminals with the same crime in other jurisdictions. *Id* at 290-92. In *Solem*, the Court determined that a sentence of life imprisonment without possibility of parole which had been imposed on a defendant convicted of a seventh nonviolent felony, the uttering of a "no account" check for $100.00, was in violation of the Eighth Amendment. The Court described the offense before the Court in *Solem* as "one of the most passive felonies a person could commit." *Id* at 296. The Court concluded that such a sentence was

16

significantly disproportionate to the crime, finding that the sentence was the ultimate sentence for a relatively minor crime, that the defendant had been treated more harshly than other criminals in that state who had committed more serious crimes, and the defendant was treated more harshly by such sentence than he would have been in other jurisdictions.

In the petitioner's case, in light of the serious nature of the offenses involved, including two prior armed robbery convictions and the first degree burglary conviction in this case, all "most serious offenses" by § 17-25-45, even pursuant to *Solem* there is no constitutional violation. The petitioner's first degree burglary conviction, along with the two prior armed robbery convictions, stand in marked contrast to the offense committed by the defendant in *Solem*, where the Court had acknowledged that a life sentence for violent criminals would pass constitutional review. *Solem*, 463 U.S. at 299 n. 26.

The *Solem* decision was weakened eight years later by the Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957 (1991), in which the Court rejected an argument virtually identical to the petitioner's in this case. In that decision, the petitioner had been convicted pursuant to a Michigan statute for possessing more than 650 grams of cocaine and was sentenced to a mandatory term of life imprisonment without the possibility of parole. He asserted that because of the mandatory nature of the sentence, the trial judge had been unconstitutionally required to impose a life sentence without consideration of any mitigating circumstances. The Supreme Court rejected his contention, holding that "[s]evere, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history...There can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory.'" *Id.* at 994-95. Thus, the Court held that individualized sentencing is constitutionally required only in capital cases and saw "no basis for extending it further." *Id.* at 996.

17

With regard to the petitioner's assertion that the sentence he received was disproportionate to the offense, the Eighth Amendment makes no requirement that noncapital sentences be individualized. In *Harmelin*, the petitioner had also asserted that the life sentence he received was "significantly disproportionate" to the crime he had committed. The Supreme Court, however, rejected the challenge on the basis of proportionality. A plurality concluded that "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." *Id.* at 965 (opinion of Scalia, J., joined by Rehnquist, C.J.). Justice Scalia, who was joined by Chief Justice Rehnquist, ruled that the

Eighth Amendment's "cruel and unusual punishment" provision did not provide any proportionality guarantee. He stated, "The Eighth Amendment is not a rachet, whereby a temporary consensus on leniency for a particular crime fixes a permanent constitutional maximum, disabling the States from giving effect to altered beliefs and responding to changed social conditions." *Id.* at 990.

Justice Kennedy, who was joined by Justices O'Connor and Souter, ruled in *Harmelin* that the Court lacked "clear objective standards to distinguish between sentences for different terms of years." *Id.* at 1001 (opinion of Kennedy, J., joined by O'Connor and Souter, JJ.) (citations omitted). Justice Kennedy further observed that "[a]lthough 'no penalty is per se constitutional,' ... the relative lack of objective standards concerning terms of imprisonment has meant that '[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [are] exceedingly rare.'" *Id.* (citations omitted). Therefore, Justice Kennedy concluded that "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate'" to the crime." *Id.* (citations omitted). However, the petitioner's sentence in that case did not conflict with such narrow proportionality principle due to the serious nature of the offense. *Id.*

18

Thus, it appears from *Harmelin* that five Justices of the Supreme Court have held that the three-factor analysis of whether a sentence is disproportionate to the crime established in *Solem* is no longer required. *See also United States v. Kratsas*, 45 F.3d 63, 67-69 (4th Cir. 1995) (holding that mandatory life sentence without parole was not disproportionate to conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine and, therefore, was not cruel and unusual punishment, even though sentencing court could not consider mitigating factors; defendant was repeat drug offender who was part of ring of distributors, 18 kilograms of cocaine were directly attributable to him, and life sentence for major drug violation was not disproportionate in comparison with other mandatory sentences).

In *State v. De La Cruz*, 393 S.E.2d 184 (S.C. 1990), the state supreme court noted that the penalty imposed for a particular offense is, except in the most unusual of cases, "'a matter of legislative prerogative' and the legislature's judgment will not be disturbed." *Id*. at 185 (quoting State v. Smith, 275 S.C. 164, 167, 268 S.E.2d 276, 277 (1980). In addition to being identified as a "most serious offense," the offense of first degree burglary that triggered the imposition of the petitioner's sentence of life without parole is also categorized by the General Assembly to be a "violent crime." *See* S.C. Code Ann. § 16-1-60 (Supp. 2000). The legislature's determination in such regard deserves substantial deference. The sentence imposed on the petitioner of life without parole is certainly not "grossly disproportionate" to the offense for which he was convicted.

The respondents note that, while review of the remaining factors of *Solem* is not necessary in light of *Harmelin,* with regard to the second prong of *Solem*, the sentence of life without possibility of parole for a conviction of fist degree burglary pursuant to § 17-25-45 is identical to that provided for convictions for all other offenses categorized as "most serious" offenses. Further, as the state supreme court correctly observed, the underlying or "core" conduct for which the petitioner received his second strike was the violent felony

19

offense of first degree burglary, which is "punishable in-and-of itself by up to life imprisonment." *White*, 562 S.E.2d at 307.  *See also* S.C. Code Ann. § 16-11-311(B) (2003) ("Burglary in the first degree is a felony punishable by life imprisonment.  For purposes of this section, 'life' means until death.  The court, in its discretion, may sentence the defendant to a term of not less than fifteen years").

Regarding the test as to whether the petitioner was treated more harshly than he would have been treated in other jurisdictions, habitual offender statutes, such as S.C. Code Ann. § 17-25-45, which provide for terms of life imprisonment without possibility of parole, have withstood challenges to claims of unconstitutional cruel and unusual punishment.  *See, e.g., United States v. Kratsas*, 45 F.3d 63 (4th Cir. 1995); *Ortiz v. State*, 470 S.E.2d 874 (Ga. 1996) (upholding against claim of unconstitutionality as cruel and unusual punishment Georgia statute which provides that any individual convicted of a "serious violent felony" who subsequently commits and is convicted of another such offense shall be sentenced to life imprisonment without parole); *State v. Rivers*, 921 P.2d 495 (Wash. 1996) (upholding against a cruel and unusual punishment challenge Washington's persistent offender law which provides for life imprisonment without opportunity of parole for defendants convicted of three "most serious offenses").

In *Rummell v. Estelle*, 445 U.S. 263 (1980)*, the United States Supreme Court dealt with the challenge to the constitutionality of a Texas recidivist statute that required life imprisonment for the conviction of a third felony and held that a sentence of life imprisonment for three minor theft felonies was not cruel and unusual punishment.  The petitioner had been convicted of fraudulent use of a credit card to obtain $80.00 worth of goods or services, passing a forged check in the amount of $28.36, and obtaining $120.75 by false pretenses. Rejecting his claim that the sentence of life imprisonment was "grossly disproportionate" to the three felonies he had committed, the Court concluded that a mandatory sentence of life

imprisonment was not cruel and unusual punishment. *Id.* at 285. The Court determined that the purpose of a repeat or persistent offender statute is

> to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated are matters largely within the discretion of the punishing jurisdiction.

*Id.* at 284-85.

The petitioner's criminal record, which includes two convictions for armed robbery prior to the conviction in this case for first degree burglary, in addition to convictions for drug offenses and other theft offenses (app. 214), dwarf the criminal record of the petitioner in *Rummel* where, again, the Court concluded that the mandatory life sentence did not constitute cruel and unusual punishment. The sentence of life imprisonment without parole imposed in this situation meets any constitutional challenge pursuant to an allegation of cruel and unusual punishment. As the state court's rejection of petitioner's arguments was not "contrary to" and did not involve "an unreasonable application of" clearly established federal law, the claim fails.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondents' motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

January 11, 2007

Greenville, South Carolina

21